IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALINA D. STEWART, )<br>)<br>              **Plaintiff,** )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>              **Defendant.** ) | Civil Action No. 7:15-CV-615 |

## REPORT AND RECOMMENDATION

Plaintiff Alina D. Stewart ("Stewart") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Stewart alleges that the ALJ erred in by failing to give the opinions of her treating physicians proper weight and by failing to account for her moderate impairment with concentration, persistence and pace. I conclude that the ALJ failed to adequately explain the weight she gave to the medical opinions in the record, so as to allow for meaningful review. Accordingly, I **RECOMMEND GRANTING in part** Stewart's Motion for Summary Judgment (Dkt. No. 14), and **DENYING** the Commissioner's Motion for Summary Judgment. Dkt. No. 17.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Stewart failed to demonstrate that she was disabled under

the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how she reached her conclusions regarding Stewart's RFC.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

## CLAIM HISTORY

Stewart protectively filed for SSI and DIB on October 11, 2012, claiming that her disability began on July 10, 2012. R. 30. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 76–155. On May 5, 2014, ALJ Anne V. Sprague held a video hearing to consider Stewart's disability claim. R. 53–74. Stewart was represented by an attorney at the hearing, which included testimony from Stewart and vocational expert Ashley Wells. Id.

On August 6, 2014, the ALJ entered her decision analyzing Stewart's claim under the familiar five-step process,[2] and denying Stewart's claim for disability. R. 30–44. The ALJ found that Stewart suffered from the severe impairments of mild osteoarthritis of the knees with right meniscus tear, mild degenerative disc disease, obesity, depression and anxiety. R. 32. The ALJ further found that Stewart retained the RFC to perform a broad range of light work, but she is restricted to occasionally lifting and carrying 20 pounds; frequently lifting and carrying 10 pounds; sitting, standing and walking for 6 hours in an 8 hour day; occasionally operating foot controls with the right lower extremity; occasionally climbing ramps and stairs, and never climbing ladders ropes or scaffolds; occasional balancing, bending, kneeling, crouching, stooping and crawling. R. 35. The ALJ also determined that Stewart is limited to simple, routine, repetitive job tasks with only occasionally social interaction with public and co-workers. Id. The ALJ determined that Stewart could not return to her past relevant work as a pharmacy

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

technician and server (R. 43), but that Stewart could work at jobs that exist in significant numbers in the national economy, such as housekeeper, garment folder, and assembler. R. 44. Thus, the ALJ concluded that Stewart was not disabled. Id.

Stewart requested that the Appeals Council review the ALJ's decision and submitted additional medical evidence. R. 9, 859–868. On September 16, 2015, the Appeals Council denied Stewart's request for review (R. 5–8), and this appeal followed.

## ANALYSIS

Stewart argues that the ALJ improperly discounted the medical opinions of her treating physician, treating counselor and two consultative physicians, all of which assess more limited restrictions than the RFC and were given either "some" or "little" weight by the ALJ. Stewart suffers from multiple physical and mental issues, including neck and shoulder pain, bilateral knee pain, fibromyalgia, depression and anxiety. Stewart was assessed with a meniscus tear in her right knee in 2012, which was managed with medication.[3] Stewart sought treatment from several medical providers, including Samina Yousuf, M.D., who treated Stewart from September 2013 through April 2014 for her complaints, including joint pain, depression, anxiety, fatigue and insomnia. R. 447–58, 602–749, 767–87, 833–36. Stewart also sought treatment with counselor Patrick Farley, Ed. D., from February 2013 through April 2014 for depression and anxiety. R. 487–89, 759–65, 831, 838–40.

The ALJ reviewed and weighed multiple opinions from medical providers when assessing Stewart's RFC, including three opinions relating to Stewart's physical limitations and four opinions regarding her mental limitations. The ALJ gave great weight to the opinions of the state agency physicians, and either "some" or "little" weight to the opinions of the treating and

---

[3] Medical records submitted to the Appeals Council indicated that Stewart underwent an arthroscopic medial meniscal debridement of her right knee on June 24, 2014. R. 859–868.

4

consultative physicians. The ALJ determined that despite Stewart's physical and mental limitations, she is capable of performing a range of work at the light level of exertion.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam).

While an ALJ is under no obligation to accept any medical opinion, he or she must explain the weight afforded to each opinion. See Monroe, 826 F.3d at 190–91. If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the

5

ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

The Fourth Circuit recently clarified the level of explanation required by the ALJ to sufficiently support the weight given to a medical opinion. The ALJ must provide a narrative discussion describing how the evidence in the record supports each of her conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case so that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio, 780 F.3d at 637). Here, the ALJ's explanation of the weight given to each of the seven medical opinions in the record—which present contradictory assessments—fails to sufficiently express how or why the ALJ arrived at her conclusions, and prevents the court from conducting a meaningful review.

With regard to Stewart's physical limitations, the ALJ reviewed the opinions of state agency physician Bert Spetzler, M.D., consultative physician Malcolm Brahms, M.D., and treating physician Samina Yousuf, M.D. Dr. Spetzler reviewed the medical evidence and provided opinions on January 22, 2013 (R. 80–82) and April 8, 2013 (R. 105–06), concluding that Stewart was capable of a range of light work, with limited pushing and pulling with her right

lower extremity, occasional balancing, stooping, kneeling, crouching and crawling, and no climbing ladders, ropes or scaffolds. Id. The ALJ gave Dr. Spetzler's opinions "great weight," because they are "consistent with the evidence of record as a whole in describing the claimant's long-term conditions, treatment history, and limitations." R. 42.

On March 4, 2014, Dr. Yousuf provided an assessment of Stewart's physical ability to do work-related activities, and indicated that she is capable of carrying 10 pounds occasionally and less than 5 pounds frequently; standing and walking less than 1 hour in an 8 hour day; sitting 2–4 hours in an 8 hour day; is unable to climb, stoop, kneel, balance, crouch or crawl; has difficulty pushing and pulling with her right leg, and should not be around moving machinery or heights. R. 815–17. Dr. Yousuf indicated that Stewart would miss more than two days of work a month due to her impairments or treatment. R. 817. Dr. Yousuf also completed an assessment of Stewart's mental limitations and indicated that due to her depression she has poor to no ability to deal with the public, maintain attention and concentration, understand, remember and carry out complex job instructions, behave in an emotionally stable manner, relate predictable in social satiations and demonstrate reliability. R. 819–20.

The ALJ assigned Dr. Yousuf's physical capacity opinion little weight, stating that it is "inconsistent with Dr. Yousuf's own clinical findings (e.g. mild clinical findings, virtually unremarkable objective examination including a well-developed and nourished appearance, no gross focal neurological deficits, etc.) and unsupported by the medical evidence as a whole." R. 39. The ALJ also gave little weight to Dr. Yousuf's mental capacity opinion, because it is "inconsistent with Dr. Yousuf's own clinical findings (e.g. psychiatric examination revealing alertness, orientation times three, no suicidal/homicidal ideations, etc. per Exhibits 24F and 33F) and unsupported by the medical evidence as a whole." R. 40. The ALJ also noted that the Dr.

7

Yousuf's opinion as to Stewart's mental limitations is not within her specialization in orthopedics. R. 40.

On May 12, 2014, after the administrative hearing in this case, consultative physician Dr. Brahms answered medical interrogatories posed by the ALJ. R. 849–58. Dr. Brahms determined that Stewart is limited to sedentary activity, specifically that she can occasionally lift and carry up to 10 pounds; sit for 6 hours in an 8 hour workday, stand for 4 hours in an 8 hour workday and walk for 2 hours in an 8 hour workday; that she can occasionally reach overhead and push/pull with both hands, occasionally use her feet for foot controls, never climb ladders or scaffolds, crawl or be exposed to unprotected heights. R. 853–57. The ALJ assigned "some" weight to the opinion of Dr. Brahms, "to the extent of the residual functional capacity assessment herein as the medical evidence of record support a light level of exertion with the additional limitations issued." R. 40.

The ALJ also considered the opinions of state agency physicians Joseph Leizer, Ph.D. and Jo McClain, Ph.D., consultative physician Robert Spangler, Ed. D., and treating counselor Patrick Farley, Ed.D., as to Stewart's mental limitations.

On January 17, 2013, Dr. Leizer reviewed the evidence and determined that Stewart's mental impairments were non-severe. The ALJ gave little weight to his opinion, noting that "the medical evidence of record supports severe mental impairments with the additional nonexertional limitations assessed herein." R. 40. On April 8, 2013, Dr. McClain reviewed the evidence and determined that Stewart is moderately limited in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of

8

rest periods. R. 106–07.  Dr. McClain stated, "claimant does have some difficulties with concentration due to her continued depressive and anxiety symptoms that would limit her in this category.  However she retains the ability to handle simple, 1–2 step tasks without significant difficulties." Id.  Dr. McClain also found that Stewart was moderately limited in her ability to interact with the general public, get along with co-workers or peers, and respond appropriately to changes in the work setting. R. 107–08.  The ALJ gave Dr. McClain's opinion great weight because it is "consistent with the evidence of record as a whole in describing the claimant's long-term conditions, treatment history, and limitations." R. 42.

On March 14, 2014, Dr. Spangler performed a consultative examination of Stewart at the request of her counsel, and assessed Stewart with moderate to severe major depressive disorder, secondary to medical conditions, moderate to severe generalized anxiety disorder, average intelligence and slow pace and fatigue after 1 and ½ hours. R. 826.  Dr. Spangler determined that Stewart had poor to no ability to deal with work stresses, understand, remember or carry out detailed or complex job instructions or demonstrate reliability, and further that Stewart would likely miss more than four days of work per month. R. 828–30. The ALJ assigned little weight to the opinion of Dr. Spangler finding it to be inconsistent with his own clinical findings "(e.g. being socially confident, having adequate social skills, alertness, orientation times four, etc. per Exhibit 30F) and unsupported by the medical evidence of record as a whole." R. 41.

Stewart's treating counselor Dr. Farley issued opinions in April 2013 (R. 589) and February 2014 (R. 811–13), finding that Stewart had poor or no ability to use judgment with the public, deal with work stresses understanding, remember and carry out detailed or complex job instructions, and demonstrate reliability. R. 588–89, 811–12.  Dr. Farley stated that "[Stewart's] symptoms and impairments prevent her from effectively managing day to day stressors in the

9

work place. Her prognosis for improvement and a return to work is poor." R. 590, 813. Dr. Farley found that Stewart would miss more than two days of work per month as a result of her impairment or treatment. Id.

When discussing Dr. Farley's opinions, the ALJ noted Dr. Farley's consistent assessments of GAF of 45, and Stewart's complaints of dysphoria, crying, diminished concentration, social withdrawal, irritability, insomnia, helplessness, hopelessness, diminished frustration tolerance, panic episodes, etc. The ALJ then contrasted Dr. Farley's findings that Stewart came to the interview unaccompanied, reported spending her days watching television and having a fair relationship with her parents, assessing GAF's as high as 70 for the past year and consistently reporting no change in Stewart's condition. The ALJ gave little weight to the opinion of Dr. Farley, finding that it was "mainly based on the claimant's subjective complaints and unsupported by the medical evidence of record as a whole." R. 41.

Stewart argues that the explanations set forth above for the ALJ's assessment of the conflicting medical opinions in the record fail to allow the court to meaningfully review the ALJ's conclusions. Stewart alleges that the ALJ did not give "specific reasons for the weight given to [Dr. Yousuf's] medical opinion, supported by the evidence in the case record." Pl. Br. Summ. J. p. 10. Specifically, Stewart argues that the ALJ provided no explanation as to why or which findings of Dr. Yousuf's she categorized as "mild" or "virtually unremarkable." Pl. Br. Summ. J. p. 9. Stewart also asserts that the ALJ's explanation of the weight given to Dr. Brahms' opinion was wholly inadequate. With regard to her mental capacity, Stewart notes that the opinions of all of her treating or consulting examiners assigned similar limitations in her ability to concentrate and interact socially, and all found that she would miss more than two days of work per month. The only conflicting opinion is that of state agency physician Dr. McClain,

10

whose opinion the ALJ gave "great weight," with no additional explanation as to how that weight was assessed.

The Commissioner argues that the ALJ's analysis of the medical opinions is sufficient because Stewart's inconsistent statements with regard to her daily activities in the record undermine her credibility and the medical opinions of record. Def. Br. Summ. J. p. 2. However, when addressing the ALJ's treatment of the medical opinions, the Commissioner provides rationale for the ALJ's assessments that are not present in the ALJ's opinion. Def. Br. Summ. J. p. 18. For example, the Commissioner asserts that "Dr. Brahms was unfamiliar with [Stewart's] clinical findings" and that "[Stewart] could not have been found disabled based upon Dr. Brahms opinion." Id. at 18–19. The Commissioner also notes that Dr. Yousuf's notes are "at best cryptic," and that Stewart's own statements fail to support the opinions of Drs. Farley, Spangler and Yousuf. Id. at 20–21.

The ALJ's explanation of the degree of weight she gave to the conflicting medical opinions lacks the required "narrative discussion describing how the evidence supports each conclusion ...." See Mascio, 780 F.3d at 636. In Monroe, the Fourth Circuit deemed insufficient the ALJ's explanation that he gave a doctor's opinion "'limited weight' based on [his] determination that the 'objective evidence or the claimant's treatment history did not support the consultative examiner's findings.'" Monroe, 826 F.3d at 188–89. The Fourth Circuit emphasized that the ALJ failed to "specify what 'objective evidence' or what aspects of [the claimant's] 'treatment history' he was referring to" and thus, [the ALJ's] analysis was "incomplete" and "preclude [d] meaningful review." Id. Here, the ALJ also failed to specify the treatment records that supported her conclusions. See id. ("Without more specific explanation of the ALJ's reasons

11

for the differing weights he assigned various medical opinions, neither we nor the district court can undertake meaningful substantial-evidence review.")

In Mascio, the Fourth Circuit similarly reversed a district court's grant of summary judgment for the Commissioner where the ALJ failed to undertake a full and proper analysis before making a conclusion as to the complainant's RFC. 780 F.3d at 640–41. The court explained that the record contained conflicting evidence as to the claimant's RFC that the ALJ did not address. Id. at 637. The lack of explanation left the court "to guess about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions." Id.  The lack of specificity and explanation at issue in Mascio and Monroe plagues the ALJ decision presently before the court.

The ALJ's statement that Dr. Brahms' opinion was given weight "to the extent of the residual functional capacity assessment herein as the medical evidence of record support a light level of exertion with the additional limitations issued" (R. 40), is a circular statement that provides no information as to what evidence in the record either supported or contradicted Dr. Brahms' findings.  Likewise, the ALJ's statement that the opinions of Drs. Spetzler and McClain were given "great" weight because they are "consistent with the evidence of record as a whole in describing the claimant's long-term conditions, treatment history, and limitations" (R. 42) leaves this court in the dark as to what evidence in the record the ALJ relies upon.   The court is similarly unclear as to what findings in Dr. Yousuf's treatment records the ALJ deemed "mild" and "virtually unremarkable," and what evidence in the record "as a whole" did not support Dr. Yousuf's opinion. R. 39.  These issues afflict each one of the ALJ's explanations of the seven medical opinions in this case. The ALJ must explain why and how the other medical opinions and medical evidence in the record caused her to either support or doubt the validity of each

12

medical opinion. Without this analysis, the court is left to mine the record for facts to support the ALJ's conclusions and fill in the blanks the ALJ left in her analysis, which the court cannot do. The record may contain evidence to support the ALJ's conclusions, but it is the responsibility of the ALJ to explain her conclusions and point to the record evidence to support those conclusions. Only then can a court engage in a meaningful review to determine whether substantial evidence supports the ALJ's decision.[4]

## CONCLUSION

For the reasons set forth above, I recommend that Stewart's motion for summary judgment be **GRANTED in part**, the Commissioner's motion for summary judgment be **DENIED**, and this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further consideration consistent with this opinion.

---

[4] Stewart also alleges that the ALJ erred by failing to properly address her moderate difficulties regarding concentration, persistence or pace in assessing her RFC and failing to provide a hypothetical question to the vocational expert that addressed those limitations. Upon remand, the Commissioner should consider Stewart's allegations of error in light of the Fourth Circuit's decision in Mascio. 780 F.3d at 637–38.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Enter: January 30, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge